FILED
2016 Mar-03  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **Guntersville Breathables, Inc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Global Glove & Safety Manufacturing,** | ) | |
| **Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Guntersville Breathables, Inc. (hereinafter "Guntersville Breathables" or the "Company") hereby alleges and shows the Court the following:

## NATURE OF THE ACTION

This is an action for federal trademark infringement, federal false designation of origin, and federal trademark dilution arising under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as well as common law trademark infringement, violation of the Alabama Deceptive Trade Practices Act, and violation of the Alabama anti-dilution statute (Ala. Code § 8-12-17).

## PARTIES

1.     Guntersville Breathables is a corporation duly organized and existing under the laws of the State of Alabama, and has its principal place of business at 131 Sundown Drive NW, Arab, Alabama 35016, within the Northeastern Division of the Northern District of Alabama.

2.     Upon information and belief, defendant Global Glove and Safety Manufacturing, Inc. (hereinafter "Global Glove") is a corporation incorporated under the laws of the State of Minnesota, and has its principal place of business at 13915 Radium Street NW, Ramsey, Minnesota 55303.

3.     Global Glove may be served with summons and a copy of this Complaint at its registered office address as set forth on the Minnesota Secretary of State business records website, which is 17700 113th Avenue North, Dayton, Minnesota 55369 and/or at its corporate headquarters located at 13915 Radium St. NW, Ramsey, Minnesota 55303.

## JURISDICTION & VENUE

4.     Jurisdiction over the subject matter of this action is founded on 15 U.S.C. § 1121 and 28 U.S.C. §§1331, 1338(a), and 1338(b).  This Court also has jurisdiction over this action under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 exclusive of interest and costs and this dispute is between citizens of different states.

Jurisdiction over the subject matter involving the non-federal claims asserted herein is founded on 1367.

5.     Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §§ 1391(b) due to the fact that a substantial part of the events giving rise to this complaint occurred in this district.

## FACTUAL BACKGROUND

6.     Guntersville Breathables manufactures, markets, and sells high-performance outdoor apparel, waders, "cooling products" and related accessories.

7.     Guntersville Breathables markets and sells its products through premier retailers throughout the United States, including Academy Sports, Bass Pro Shops, Big 5, Big Rock Sports, Cabela's, Dick's Sporting Goods, Gander Mountain, The Home Depot, Sports Authority, Sportsman's Warehouse, Wal-Mart and a wide variety of independent sporting goods and outdoor retailers.  Products also are available for online purchase.

8.     Guntersville Breathables' products are sold primarily under the frogg toggs brand.  Since at least as early as 1996, Guntersville Breathables has sold goods under the trademark "frogg toggs."

9.     Guntersville Breathables' goods are widely recognized for their quality and functionality.  The Company's signature lightweight outerwear and rainwear is made from nonwoven fabric, a material that is highly breathable and water-resistant. Guntersville Breathables believes it is the only apparel company in the world that manufactures nonwoven rainwear products for the sporting and outdoor retail markets.

10.    The Company has established several marketing and advertising campaigns through television, print, online and social media.  Additionally, the Company utilizes sales programs, product allowances and staff professionals, and management regularly participates in trade shows, all of which have strengthened the Company's marks (described below) throughout the United States.

## Guntersville Breathables' frogg toggs 826 Mark

11.    On May 24, 1996, Guntersville Breathables filed for trademark protection of the following mark as reflected in US Serial Number 75/109,746 before the U.S. Patent and Trademark Office ("USPTO"):



12.     On March 11, 1997, Guntersville Breathables' trademark application was approved and registered with the USPTO as reflected in US Registration Number 2,043,826 (hereinafter, the "frogg toggs 826 Mark").   A true and correct copy of information from the USPTO's database regarding the application and registration of the frogg toggs 826 Mark is attached to this Complaint as **Exhibit "A."**

13.     Guntersville Breathables' first use of the mark recognized in the frogg toggs 826 Mark was April 1, 1996.

14.     The goods Guntersville Breathables sells under the frogg toggs 826 Mark include, but are not limited to:

*Clothing, namely, breathable waterproof jackets and pants*

**Guntersville Breathables' frogg toggs 498 Mark**

15.     On July 19, 1999, Guntersville Breathables filed for trademark protection of the following mark as reflected in US Serial Number 75/753,442 before the USPTO:



16.     On April 11, 2000, Guntersville Breathables' trademark application was approved and registered with the USPTO as reflected in US Registration Number 2,341,498 (hereinafter, the "frogg toggs 498 Mark").  A true and correct copy of information from the USPTO's database regarding the application and registration of the frogg toggs 498 Mark is attached to this Complaint as **Exhibit "B."**

17.     Guntersville Breathables' first use of the mark recognized in the frogg toggs 498 Mark was April 1, 1996.

18.     The goods Guntersville Breathables sells under the frogg toggs 498 Mark include, but are not limited to:

19.     *Clothing, namely, jackets, pants, shirts, and rainwear*

## Guntersville Breathables' frogg toggs 685 Mark

20.     On January 5, 2010, Guntersville Breathables filed for trademark protection of the following standard character mark as reflected in US Serial Number

77/904,968 before the USPTO:

# FROGG TOGGS

21.     On February 15, 2011, Guntersville Breathables' trademark application was approved and registered with the USPTO as reflected in US Registration Number 3,918,685 (hereinafter, the "frogg toggs 685 Mark").  A true and correct copy of information from the USPTO's database regarding the application and registration of the frogg toggs 685 Mark is attached to this Complaint as **Exhibit "C."**

22.     Guntersville Breathables' first use of the mark recognized in the frogg toggs 685 Mark was April 1, 1996.

23.     The goods Guntersville Breathables sells under the frogg toggs 685 Mark include, but are not limited to:

*Clothing, namely, breathable waterproof jackets and pants*

24.     The frogg toggs 826 Mark, the frogg toggs 498 Mark, and the frogg toggs 685 Mark are collectively referred to herein as the "Guntersville Breathables Marks."

25.     Upon information and belief, Guntersville Breathables has used each of the Guntersville Breathables Marks in commerce since well before Global Glove began using the infringing marks identified herein.

26.     The Guntersville Breathables Marks are incontestable pursuant to 15 U.S.C. § 1065 and are either inherently distinctive or have acquired secondary meaning.

27.     The Guntersville Breathables Marks are arbitrary and are therefore afforded the strongest protection under the Lanham Act.

28.     The goods protected by the Guntersville Breathables Marks are collectively referred to herein as the "Guntersville Breathables Goods."

29.     Guntersville Breathables has expended considerable resources in developing and marketing the Guntersville Breathables Goods throughout the United States for twenty (20) years.  As a result of Guntersville Breathables' continuous use of the Guntersville Breathables Marks, as well as Guntersville Breathables' marketing and promotion of the Guntersville Breathables Goods, the Guntersville Breathables Marks have become well known to consumers throughout the United States and internationally.  This goodwill in and recognition of the Guntersville Breathables

Marks and the public's association of the Guntersville Breathables Marks with the Guntersville Breathables Goods are valuable assets of Guntersville Breathables.

**Global Glove's unauthorized use of the Guntersville Breathables Marks**

30.    In March of 2015, Guntersville Breathables became aware that Global Glove was using the word mark "FROGWEAR" and a "Frog Design" in connection with the sale of some of its goods, particularly clothing.

31.    A search by undersigned counsel of Global Glove's website revealed at least one hundred twenty (120) examples of Global Glove's use of marks that infringe on Guntersville Breathables' Marks due to those marks' similarity to the Guntersville Breathables Marks and likelihood of confusion stemming therefrom, among other reasons.

32.    Rather than burden the Court at this time with an exhibit containing all such examples, Guntersville Breathables has attached hereto as **Exhibit "D"** twenty (20) examples of Global Glove's infringing marks, some of which include a picture of the "Frog Design" referenced herein and all of which are typical of the other infringing marks on Global Glove's website.

33.    During that time, Guntersville Breathables also became aware that Global Glove had filed an application with the USPTO, U.S. Serial Number 86/420,212 (the

"FROGWEAR Application"), to register the word mark "FROGWEAR" in connection with rain jackets and rain suits.  This application was later approved as reflected in U.S. Registration Number 4,775,862 (the "FROGWEAR Mark").  The FROGWEAR Mark is shown below:

# FROGWEAR

34.    Upon learning of these facts, on March 10, 2015 Guntersville Breathables sent a letter to Craig Wagner, President and CEO of Global Glove, delivered via hand delivery and email, informing Mr. Wagner Global Glove's use of the term "FROGWEAR" and/or the "Frog Design" in connection with Global Glove's efforts to market or sell goods, particularly clothing such as rain jackets and rain suits, constituted an infringement of Guntersville Breathables' statutory and common law rights in the Guntersville Breathables Marks.

35.    In its March 10, 2015 letter, Guntersville Breathables also put Global Glove on notice that Global Glove's then-pending FROGWEAR Application constituted further infringement of Guntersville Breathables' statutory and common law rights in the Guntersville Breathables Marks.  A true and correct copy of this letter is attached as **Exhibit "E"** to this Complaint.

36.     Global Glove has willfully refused Guntersville Breathables' request to cease and desist from any and all use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods, particularly clothing such as rain jackets and rain suits.

37.     Global Glove's use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods, particularly clothing such as rain jackets and rain suits, is likely to cause confusion, or to cause mistake, or to deceive consumers and potential consumers as to the source or origin of Global Glove's goods, or to imply that there is some type of affiliation or connection between Guntersville Breathables and Global Glove, or that Guntersville Breathables has sponsored, endorsed, or otherwise approved of the goods sold by Global Glove.  This is especially so given the fact that Global Glove's and Guntersville Breathables' target markets and potential customers overlap and their products are so closely-related.

38.     Global Glove's use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods has caused and will continue to cause irreparable harm to Guntersville Breathables and to the substantial goodwill embodied in the Guntersville Breathable Marks, and such acts will continue unless restrained by this Court.

39.     Guntersville Breathables has no adequate remedy at law to prevent or recover from the damages addressed herein.

## COUNT I:
## VIOLATION OF THE LANHAM ACT
## FEDERAL TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

40.     Guntersville Breathables realleges and incorporates herein the allegations of the foregoing paragraphs as though fully set forth herein.

41.     Guntersville Breathables owns the Guntersville Breathables Marks.

42.     The term "FROGWEAR," the FROGWEAR Mark, and the "Frog Design," as being used by Global Gloves, are confusingly similar to the Guntersville Breathables Marks.

43.     By its unauthorized use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods, Global Glove has used and is continuing to use in commerce a reproduction, counterfeit, copy or colorable imitation of the federally registered Guntersville Breathables Marks.

44.     Such use is likely to cause or constitute confusion, mistake, or deception in violation of 15 U.S.C. § 1114 by creating the false and misleading impression that

Global Glove's goods are actually those of Guntersville Breathables, or that they are associated or connected with Guntersville Breathables, or that Global Glove's goods are sponsored, endorsed, or approved of by Guntersville Breathables.

45.    Global Glove's infringement of Guntersville Breathables' Marks has taken place with full knowledge of Guntersville Breathables' Marks and therefore has been intentional, deliberate, and willful.

46.    Global Glove's use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

47.    As a direct and proximate result of Global Glove's acts, Guntersville Breathables has suffered damages in an amount not yet fully ascertained, and has and will continue to suffer irreparable damage to its business reputation and goodwill should Global Glove continue these actions.

48.    Guntersville Breathables has no adequate remedy at law to prevent or recover from the damages addressed herein.

49.    Global Glove has caused and continues to cause substantial injury to the public and to Guntersville Breathables.  Unless Global Glove is enjoined by this Court, Guntersville Breathables will continue to suffer substantial injuries due to Global

Glove's unauthorized use of marks confusingly similar to the Guntersville Breathables Marks.

50.     Accordingly, Guntersville Breathables is entitled to, and hereby prays for, injunctive relief under 15 U.S.C. § 1116, as well as recovery of Global Glove's profits associated with the sale of goods associated with the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design," Guntersville Breathables' damages (compensatory and punitive), costs, and reasonable attorneys' fees, under 15 U.S.C. §§ 1114 and 1117, and any other relief to which Guntersville Breathables is entitled.

**COUNT II:**
**VIOLATION OF THE LANHAM ACT**
**FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125**

51.     Guntersville Breathables realleges and incorporates herein the allegations of the foregoing paragraphs as though fully set forth herein.

52.     Guntersville Breathables owns the Guntersville Breathables Marks.

53.     The term "FROGWEAR," the FROGWEAR Mark, and the "Frog Design," as being used by Global Gloves, are confusingly similar to the Guntersville Breathables Marks.

54.     By its unauthorized use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods, Global Glove has used and is continuing to use in commerce false designations of origin, false descriptions, and/or false representations which are likely to cause or constitute confusion, mistake, or deception in violation of 15 U.S.C. § 1125.

55.     Such use is likely to cause or constitute confusion, mistake, or deception in violation of 15 U.S.C. § 1125 by creating the false and misleading impression that Global Glove's goods are actually those of Guntersville Breathables, or that they are associated or connected with Guntersville Breathables, or that Global Glove's goods are sponsored, endorsed, or approved of by Guntersville Breathables.

56.     Global Glove's use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" constitute false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125.

57.     Upon information and belief, Global Glove's actions have been committed intentionally, with actual notice of Guntersville Breathables' Marks, with the intent being to trade on the goodwill associated with the Guntersville Breathables Marks.

58.     As a direct and proximate result of Global Glove's acts, Guntersville Breathables has suffered damages in an amount not yet fully ascertained, and has and will continue to suffer irreparable damage to its business reputation and goodwill should Global Glove continue these actions.

59.     Guntersville Breathables has no adequate remedy at law to prevent or recover from the damages addressed herein.

60.     Global Glove has caused and continues to cause substantial injury to the public and to Guntersville Breathables.  Unless Global Glove is enjoined by this Court, Guntersville Breathables will continue to suffer substantial injuries due to Global Glove's unauthorized use of marks confusingly similar to the Guntersville Breathables Marks.

61.     Accordingly, Guntersville Breathables is entitled to, and hereby prays for, injunctive relief under 15 U.S.C. § 1116, and recovery of Global Glove's profits associated with the sale of goods associated with the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design," Guntersville Breathables' damages (compensatory and punitive), costs, and reasonable attorneys' fees, under 15 U.S.C. §§ 1125 and 1117, and any other relief to which Guntersville Breathables is entitled.

## COUNT III:
## VIOLATION OF THE LANHAM ACT
## FEDERAL TRADEMARK DILUTION
## 15 U.S.C. § 1125

62.    Guntersville Breathables realleges and incorporates herein the allegations of the foregoing paragraphs as though fully set forth herein.

63.    The Guntersville Breathables Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125 in this District and throughout the United States in that:

i.    The Guntersville Breathables Marks possess both inherent and acquired distinctiveness;

ii.    Guntersville Breathables has made extensive, longstanding, and exclusive use of the Guntersville Breathables Marks throughout the United States since at least as early as April 1, 1996;

iii.    Guntersville Breathables has extensively promoted the Guntersville Breathables Goods sold under the Guntersville Breathables Marks throughout the United States;

iv.    Guntersville Breathables has used and is currently using the Guntersville Breathables Marks throughout the United States;

v.   Guntersville Breathables is currently distributing the Guntersville Breathables Goods under the Guntersville Breathables Marks in multiple channels of trade throughout the United States with major retailers, including Academy Sports, Bass Pro Shops, Big 5, Big Rock Sports, Cabela's, Dick's Sporting Goods, Gander Mountain, The Home Depot, Sports Authority, Sportsman's Warehouse, Wal-Mart and a wide variety of independent sporting goods and outdoor retailers; and

vi.   Guntersville Breathables has successfully cultivated a high degree of recognition of the Guntersville Breathables Marks throughout the United States.

64.   Global Glove's unauthorized use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" began after the Guntersville Breathables Marks became famous and is, therefore, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

65.   Unless enjoined by this Court, Global Glove's unauthorized use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods will cause dilution of the distinctive quality of the famous Guntersville Breathables Marks and cause damage to Guntersville Breathables' goodwill and reputation.

66.     Global Glove's knowing and intentional use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" constitutes willful dilution of the distinctiveness of Guntersville Breathables' Marks and is likely to erode the public's exclusive identification of those marks with Guntersville Breathables, and diminish the distinctiveness, effectiveness, and prestigious connotations of the Guntersville Breathables Marks.  Upon information and belief, Global Glove's actions also will tarnish Guntersville Breathables' Marks by associating them with goods of a quality that is not consistent with the high quality of Guntersville Breathables' Goods.

67.     As a direct and proximate result of Global Glove's acts, Guntersville Breathables has suffered damages in an amount not yet fully ascertained, and has and will continue to suffer irreparable damage to its business reputation and goodwill should Global Glove continue these actions.

68.     Guntersville Breathables has no adequate remedy at law to prevent or recover from the damages addressed herein.

69.     Global Glove has caused and continues to cause substantial injury to the public and to Guntersville Breathables.  Unless Global Glove is enjoined by this Court, Guntersville Breathables will continue to suffer substantial injuries due to Global Glove's unauthorized use of marks confusingly similar to the Guntersville Breathables Marks.

70.     Accordingly, Guntersville Breathables is entitled to, and hereby prays for, injunctive relief under 15 U.S.C. § 1116, and recovery of Global Glove's profits associated with the sale of goods associated with the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design," Guntersville Breathables' damages (compensatory and punitive), costs, and reasonable attorneys' fees, under 15 U.S.C. §§ 1125 and 1117, and any other relief to which Guntersville Breathables is entitled.

## COUNT IV:
## COMMON LAW TRADEMARK INFRINGEMENT

71.     Guntersville Breathables realleges and incorporates herein the allegations of the foregoing paragraphs as though fully set forth herein.

72.     Guntersville Breathables has used the Guntersville Breathables' Marks in the State of Alabama in association with the Guntersville Breathables Marks long prior to Global Glove's first use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design."  As a result, the Guntersville Breathables Marks have become widely known and have become identified in the public mind as an indicator of the source and sponsorship of the Guntersville Breathables Goods.

73.     Global Glove, without Guntersville Breathables' consent or authorization, has used and is continuing to use reproduction, copies or colorable imitations of the famous Guntersville Breathables Marks in connection with the marketing and sale of

Global Glove's goods, which is likely to cause confusion and mistake as to the source or origin of Global Glove's goods.

74.     Upon information and believe, Global Glove has acted with full knowledge of Guntersville Breathables' rights in the Guntersville Breathables Marks and without regard to the likelihood of confusion of the public created by such activities, and has done so with the willful intent to trade on the goodwill associated with the Guntersville Breathables Marks.  Accordingly, Global Glove has willfully and deliberately engaged in common law trademark infringement and unfair competition under the common law of the State of Alabama.

75.     As a direct and proximate result of Global Glove's trademark infringement, Guntersville Breathables has suffered damages in an amount not yet fully ascertained, and has and will continue to suffer irreparable damage to its business reputation and goodwill should Global Glove continue these actions.

76.     Guntersville Breathables has no adequate remedy at law to prevent or recover from the damages addressed herein.

77.     Global Glove has caused and continues to cause substantial injury to the public and to Guntersville Breathables.  Unless Global Glove is enjoined by this Court, Guntersville Breathables will continue to suffer substantial injuries due to Global

Glove's unauthorized use of marks confusingly similar to the Guntersville Breathables Marks.

78.     Accordingly, Guntersville Breathables is entitled to, and hereby prays for, injunctive relief, recovery of Global Glove's profits associated with the sale of goods associated with the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design," as well as Guntersville Breathables' damages (compensatory and punitive), costs, reasonable attorneys' fees under the common law of the State of Alabama, and any other relief to which Guntersville Breathables is entitled.

## COUNT V:
## VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT

79.     Guntersville Breathables realleges and incorporates herein the allegations of the foregoing paragraphs as though fully set forth herein.

80.     Global Glove's actions are likely to cause confusion or misunderstanding as to the source, sponsorship, and/or approval of the goods it provides.  Global Glove's actions further are likely to cause confusion or misunderstanding as to the affiliation, connection, or association with, by and between Guntersville Breathables and Global Glove.  Global Glove thus is in violation of numerous subsections of the Alabama

Deceptive Trade Practices Act, Ala. Code §§ 8-19-5, including but not limited to subsections (2), (3), (4), and (5).

81.    As a direct and proximate result of Global Glove's acts, Guntersville Breathables has suffered damages in an amount not yet fully ascertained, and has and will continue to suffer irreparable damage to its business reputation and goodwill should Global Glove continue these actions.

82.    Global Glove has caused and continues to cause substantial injury to the public and to Guntersville Breathables.  Accordingly, Guntersville Breathables is entitled to, and hereby prays for, injunctive relief, recovery of Global Glove's profits associated with the sale of goods associated with the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design," and Guntersville Breathables' damages (including treble damages pursuant to Ala. Code § 8-19-10), costs, and reasonable attorneys' fees under the common law of the State of Alabama.

## COUNT VI:
## STATE LAW TRADEMARK DILUTION
## ALA. CODE § 8-12-17

83.    Guntersville Breathables realleges and incorporates herein the allegations of the foregoing paragraphs as though fully set forth herein.

84. The Guntersville Breathables Marks are famous and distinctive within the meaning of Ala. Code § 8-12-17 in the State of Alabama and in the North Alabama geographic area as a designation of source of the goods or services associated with Guntersville Breathables Marks because:

   i.    The Guntersville Breathables Marks possess both inherent and acquired distinctiveness;

   ii.   Guntersville Breathables has made extensive, longstanding, and exclusive use of the Guntersville Breathables Marks throughout the United States, including throughout the State of Alabama, since at least as early as April 1, 1996;

   iii.  Guntersville Breathables has extensively promoted the Guntersville Breathables Goods sold under the Guntersville Breathables Marks throughout the United States, including throughout the State of Alabama;

   iv.   Guntersville Breathables has used and is currently using the Guntersville Breathables Marks throughout the United States, including throughout the State of Alabama;

v.   Guntersville Breathables is currently distributing the Guntersville Breathables Goods under the Guntersville Breathables Marks in multiple channels of trade throughout the United States, including throughout the State of Alabama, with major retailers, including Academy Sports, Bass Pro Shops, Big 5, Big Rock Sports, Cabela's, Dick's Sporting Goods, Gander Mountain, The Home Depot, Sports Authority, Sportsman's Warehouse, Wal-Mart and a wide variety of independent sporting goods and outdoor retailers;

vi.   Guntersville Breathables has successfully cultivated a high degree of actual recognition of the Guntersville Breathables Marks amongst the public throughout the United States, including throughout the State of Alabama; and

vii.   The Guntersville Breathables Marks are registered with the United States Patent and Trademark Office.

85.   Global Glove's unauthorized use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" began after the Guntersville Breathables Marks became famous and is, therefore, in violation of Ala. Code § 8-12-17.

86.     Unless enjoined by this Court, Global Glove's unauthorized use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" in connection with Global Glove's efforts to market or sell its goods will cause dilution of the distinctive quality of the famous Guntersville Breathables Marks and cause damage to Guntersville Breathables' goodwill and reputation.

87.     Global Glove's knowing and intentional use of the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design" constitutes willful dilution of the distinctiveness of Guntersville Breathables' Marks and is likely to erode the public's exclusive identification of those marks with Guntersville Breathables, and diminish the distinctiveness, effectiveness, and prestigious connotations of the Guntersville Breathables Marks.  Upon information and belief, Global Glove's actions also will tarnish Guntersville Breathables' Marks by associating them with goods of a quality that is not consistent with the high quality of Guntersville Breathables' Goods.

88.     As a direct and proximate result of Global Glove's acts, Guntersville Breathables has suffered damages in an amount not yet fully ascertained, and has and will continue to suffer irreparable damage to its business reputation and goodwill should Global Glove continue these actions.

89.     Guntersville Breathables has no adequate remedy at law to prevent or recover from the damages addressed herein.

90.     Global Glove has caused and continues to cause substantial injury to the public and to Guntersville Breathables.  Unless Global Glove is enjoined by this Court, Guntersville Breathables will continue to suffer substantial injuries due to Global Glove's unauthorized use of marks confusingly similar to the Guntersville Breathables Marks.

91.     Accordingly, Guntersville Breathables is entitled to, and hereby prays for, injunctive relief, recovery of Global Glove's profits associated with the sale of goods associated with the term "FROGWEAR," the FROGWEAR Mark, and/or the "Frog Design," as well as Guntersville Breathables' damages (compensatory and punitive), costs, reasonable attorneys' fees, and any other relief to which Guntersville Breathables is entitled.

## RELIEF REQUESTED

Guntersville Breathables prays that this Court enter an order:

(a)     entering judgment in favor of Guntersville Breathables and against Global Glove on each and every count in this Complaint;

(b)     awarding such actual damages (compensatory and punitive) as Guntersville Breathables may prove in this action and/or that Global Glove account to Guntersville Breathables for all amounts received

by Global Glove as a direct and proximate result of Global Glove's

unlawful conduct, and that Guntersville Breathables be awarded all of

Global Glove's profits derived therefrom;

(c)   preliminarily and permanently enjoining and restraining Global

Glove, as well as any and all of its parents, subsidiaries, affiliated

companies, directors, officers, agents, servants, employees, attorneys,

representatives, successors, assigns, and all persons and entities

acting under their direction, or in active concert or participation with

them, from:

> 1.   Using the term "FROGWEAR," the FROGWEAR Mark,
> and/or the "Frog Design," and/or any portion thereof, or
> anything confusingly similar thereto, in connection with any
> goods sold by or on behalf of Global Glove;

> 2.   filing and/or prosecuting any applications to register
> trademarks containing the term "FROGWEAR," the
> FROGWEAR Mark, and/or the "Frog Design," or anything
> confusingly similar to the Guntersville Breathables Marks;

> 3.   using any other false designation of origin or false
> description or representation or any other thing calculated or

likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Global Glove's goods are in any way associated or affiliated with or related to the Guntersville Breathables Marks or the Guntersville Breathables Goods as described herein;

(d)     directing Global Glove to deliver up to Guntersville Breathables for destruction or other disposition, within thirty (30) days of the entry of final judgment herein, any and all prints, documents and advertising or promotional materials in its possession or within its custody or control that bear any designation in violation of Guntersville Breathables' rights in and to the Guntersville Breathables Marks as decreed herein, together with all means of making the same;

(e)     directing Global Glove to surrender or cause to be surrendered, in an action before the U.S. Patent and Trademark Office Trademark Trial and Appeal Board, U.S. Registration Number 4,775,862 (the "FROGWEAR Mark") as well as any and all other trademarks that are confusingly similar to any of the Guntersville Breathables Marks;

(f)    directing Global Glove to file with the Court and serve on counsel for Guntersville Breathables, within thirty days after entry of any injunction issued by the Court in this action, a sworn statement as provided in 15 U.S.C. § 1116;

(g)    awarding Guntersville Breathables its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117; and

(h)    awarding such other and further relief as the Court deems just and proper.


## JURY DEMAND

Guntersville Breathables requests trial by jury on all issues so triable.


*[CONTINUED ON THE FOLLOWING PAGE]*

Respectfully submitted this 3rd day of March, 2016.

_____
Tracy A. Marion (MAR218)
ASB-3888-V17K

_____
Ann I. Dennen (DEN023)
ASB-8618-D44A


Attorneys for Plaintiff
Lanier Ford Shaver & Payne P.C.
2101 West Clinton Avenue, Suite 102
Huntsville, AL 35805
Phone: 256-535-1100
Fax: 256-533-9322
tam@lanierford.com
aid@lanierford.com